UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL JEFFREY MOCK, <br><br> Plaintiff, <br><br> v. <br><br> BENJAMIN GRINER, et al., <br><br> Defendants. | CAUSE NO. 1:23-cv-50-HAB-SLC |

OPINION AND ORDER

Michael Jeffrey Mock, a prisoner without a lawyer, is proceeding in this case against Officer Benjamin Griner, Officer Bradley Carlson, Correctional Officer Chandler McCutcheon, and Correctional Officer Rachel Hartman "in their individual capacities for compensatory and punitive damages for using excessive force on January 3, 2023, in violation of the Fourth Amendment[.]" ECF 12 at 3-4. Officers Griner and Carlson are police officers with the Bluffton Police Department, while Correctional Officers McCutcheon and Hartman are correctional officers at the Wells County Jail. On January 19, 2024, Correctional Officers McCutcheon and Hartman filed a motion for summary judgment. ECF 44. That same day, Officers Griner and Carlson filed a separate motion for summary judgment. ECF 49. Mock filed an untimely response to both summary judgment motions. ECF 63. The defendants have not yet filed a reply, but the court concludes it can move forward and rule on the summary judgment motions.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The question in Fourth Amendment excessive use of force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Rather, the question is "whether the totality of the circumstances" justifies the officers' actions. *Graham* at 396. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the perfect vision of hindsight. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the

2

Fourth Amendment. *Id*. An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest. *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009). "Factors relevant to the reasonableness inquiry include . . . whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016).

The defendants provide affidavits, in which they attest to the following facts: On January 3, 2023, Officers Griner and Carlson took Mock into custody for public intoxication and escorted him to a hospital for medical clearance before escorting him to the Wells County Jail. ECF 50-3 at 1-2. Upon arrival at the Wells County Jail, Officers Griner and Carlson met with Correctional Officers Hartman and McCutcheon outside of intake and informed them Mock had been physically resistant and assaultive and had spit on the hospital floor. ECF 46-3 at 2. Given this information, Correctional Officer Hartman determined to place a spit hood on Mock to prevent him from spitting on officers during intake. *Id.* Correctional Officers Hartman and McCutcheon assisted Mock into the intake area and performed a pat down, during which Mock yelled, cursed, physically resisted, and kicked at officers. *Id.* As a result, Officers Griner and Carlson assisted with the initial pat down and placed Mock face down on the intake desk to combat his efforts to resist. *Id.* Officer Griner advised Correctional Officer Hartman that Mock had made suicidal statements, so Correctional Officer Hartman determined to place Mock in Cell R-9, a suicide watch cell, and to complete the removal of his street clothing once he was in the cell. *Id.* at 3.

3

The officers escorted Mock to Cell R-9, but had to slide him down the hallway because he pulled his legs up and refused to walk. ECF 46-3 at 3.[1] Once Mock was placed on the bunk in Cell R-9, he started kicking and being aggressive toward the officers. *Id.* Correctional Officer Hartman attempted to remove Mock's handcuffs, but he was being uncooperative. *Id.* Officer Carlson and Correctional Officer McCutcheon came into the cell to hold Mock so Correctional Officer Hartman could remove his handcuffs. *Id.* Once the handcuffs were removed, Correctional Officer Hartman attempted to control Mock's left arm so his clothing could be removed and he could be placed in a suicide smock. *Id.* at 4. Mock continued to move around and kick at the officers as they tried to remove his clothing. *Id.* Eventually, Officer Griner pulled out his taser and pointed it at Mock's chest to get control over him and remove his clothing. *Id.* Mock briefly complied and the officers were able to remove his clothing and place him in a suicide smock. *Id.* The officers then ordered Mock to remain on the bunk while they exited the cell, but Mock stood up and faced them, ignoring their commands. *Id.*; ECF 46-4 at 3. Correctional Officer McCutcheon positioned himself in front of Mock and turned him so he was facing the wall so the officers could exit the cell. *Id.* Mock complied, and was left alone in the cell. ECF 46-3 at 4; ECF 46-4 at 4. The defendants attest they used the least amount of force necessary to control Mock so his handcuffs and clothing could be removed, and did not slam, hit, or apply pressure to his neck or

---

[1] Mock responds the officers were moving him "so fast" that he couldn't even attempt to walk. ECF 63 at 8. But he does not dispute the officers began sliding him because he pulled his legs up and refused to walk.

4

face. ECF 46-3 at 5; ECF 46-4 at 4. They provide surveillance footage of the encounter, which they argue shows they never used excessive force against Mock. ECF 38.

In his response, Mock does not directly dispute any of the defendants' attestations regarding the amount of force they used on January 3. ECF 63. The court therefore accepts those attestations as undisputed. Instead, Mock raises three arguments that must be addressed. First, Mock argues that portions of the surveillance footage provided by the defendants are missing or have been altered. ECF 63 at 1-5. But Mock does not explain what the missing portions of the surveillance footage would show, or explain how the missing footage would alter the outcome of this case. Second, Mock argues that Correctional Officer Hartman made contact with his stomach and pushed down on his intestines during the encounter, and that he'd recently had surgery on his stomach and hip. ECF 63 at 6-8. But there is no evidence Correctional Officer Hartman knew Mock had recently had stomach surgery, and his mere assertion she "made contact" with and "pushed down" on his stomach does not show she used an objectively unreasonable amount of force. Third, Mock argues the defendants can be seen "laughing" after they remove his clothes and place him in the suicide smock. *Id.* at 7. But the defendants' alleged laughter is irrelevant, as the standard considers only whether the defendant's actions were "objectively reasonable" and does not take into account their subjective intentions or motivations. *See Graham*, 490 U.S. at 397 (1989).

Here, there is no evidence in the record by which a reasonable jury could conclude the defendants used greater force than was reasonably necessary to effectuate Mock's arrest and booking at the Wells County Jail. Specifically, the defendants provide

undisputed attestations that (1) Mock continuously resisted his arrest by yelling, cursing, physically resisting, kicking at, and being aggressive toward the officers, (2) they used only enough force as was necessary to overcome his resistance, remove his clothing, and place him in a suicide smock, and (3) they did not unnecessarily hit, slam, or apply pressure to his neck or face. Mock does not dispute he resisted the officers or provide any evidence they used an objectively unreasonable amount of force. Thus, because there is no evidence the defendants used more force than was reasonably necessary to effectuate Mock's arrest, summary judgment is warranted in their favor.

For these reasons, the court:

(1) GRANTS Correctional Officer McCutcheon's and Correctional Officer Hartman's motion for summary judgment (ECF 44);

(2) GRANTS Officer Griner's and Officer Carlson's motion for summary judgment (ECF 49); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Michael Jeffrey Mock and to close this case.

SO ORDERED on April 23, 2024

s/Holly A. Brady
CHIEF JUDGE
UNITED STATES DISTRICT COURT